Justice KITTREDGE.
I concur in part and respectfully dissent in part. I join the majority in its construction of the term “user” for purposes of section 15-73-10 of the South Carolina Code (2005). I dissent with respect to the “sophisticated user” doctrine and would adopt what I believe to be the excellent analysis of the court of appeals concerning the doctrine and its application to this case.
I offer two additional comments. First, I do not agree with the majority “that prior to the court of appeals’ opinion in this case, neither this Court, nor the court of appeals, had explicitly adopted the [sophisticated user] defense.” The doctrine was clearly recognized in Bragg v. Hi-Ranger, Inc., 319 S.C. 531, 550, 462 S.E.2d 321, 332 (Ct.App.1995), when the court of appeals “concludefd] the trial court properly charged the jury concerning the sophisticated user defense.” Nevertheless, I would modify Bragg in one respect. The jury charge approved in Bragg instructed the jury that manufacturers have no duty to warn of risks associated with a product when the product is to be distributed to a “learned intermediary” or sophisticated user. Id. at 549, 462 S.E.2d at 331. A similar charge was given in this case. See Lawing v. Trinity Mfg., Inc., 406 S.C. 13, 32, 749 S.E.2d 126, 136 (Ct.App.2013). However, contrary to the jury charges in Bragg and in this case, the sophisticated user doctrine does not negate the existence of a duty on the part of the manufacturer. As the court of appeals correctly observed, “the sophisticated user doctrine does not operate to defeat any duty. It simply identifies circumstances the jury must consider when deter *230 mining whether the supplier’s duty to warn was breached.”[17] Id. at 28, 749 S.E.2d at 133.
Second, I would not avoid the issue of the sophisticated user doctrine’s existence and applicability by creating a distinction between the labeling and the use of the sodium brómate, as if the two are not related. I view the issues of labeling and use as inextricably connected in this case. It is undisputed that Trinity Manufacturing and Matrix Outsourcing knew that Engelhard employees would be in close proximity to the sodium brómate, working with or around the dangerous product. While acknowledging “Engelhard was very familiar with sodium brómate and understood its dangerous nature,” the Court states that “Engelhard’s knowledge of the dangers of sodium brómate does not affect the suppliers’ duty to properly label sodium brómate as a hazardous and flammable product.” I believe Engelhard’s knowledge of the dangers of sodium brómate is at the heart of the sophisticated user defense. Engelhard’s knowledge of those dangers is a critical factor in assessing “ ‘whether the supplier ... acted reasonably in assuming that the intermediary would recognize the danger and take precautions to protect its employees.’ ” Bragg, 319 S.C. at 550, 462 S.E.2d at 332 (quoting O’Neal v. Celanese Corp., 10 F.3d 249, 253 n. 2 (4th Cir.1993)). Again, I refer to the court of appeals’ opinion:
Considered as a whole, this evidence supports the trial court’s decision to charge the jury on the sophisticated user doctrine. It shows Trinity and Matrix knew Engelhard used large quantities of sodium brómate and had tested samples of the product in its laboratory before deciding to buy it. It also shows that employees of Matrix, a wholly-owned subsidiary of Trinity, and Univar, the company to which Trinity directly sold the sodium brómate, believed Engelhard had a safety program that ensured employees were adequately informed of the dangers of the chemicals in the facility. Finally, it shows Trinity and Matrix knew about the MSDS and that Engelhard received it. A jury could infer from this evidence that Trinity and Matrix acted *231 reasonably in providing warnings on the bags and in the MSDS, relying on Engelhard to provide its employees any additional warnings about the dangers of sodium brómate.
Lawing, 406 S.C. at 31-32, 749 S.E.2d at 135-36. I would affirm the court of appeals with respect to the sophisticated user doctrine.

. The court of appeals did not address, and properly so in my judgment, the effect of this erroneous jury instruction in this case because it was not preserved for appellate review. Id. at 32, 749 S.E.2d at 136.